IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RONALD ADAMS CONTRACTOR, INC. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 03-2771C |
| | ) | (Judge Horn) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant | ) | |

**AMENDED** COMPLAINT

Ronald Adams Contractor, Inc. ("Ronald Adams"), Plaintiff, presents the following **Amended** Complaint against the United States of America, Defendant, and for its causes of action, Ronald Adams would show the Court the following:

1.

Ronald Adams is a corporation organized and existing pursuant to the laws of the State of Louisiana, having its principal place of business in Thibodaux, Louisiana.

2.

The United States of America ("the United States"), Defendant, is a governmental agency which, at all times relevant to this case, acted by and through the United States Army Corps of Engineers, New Orleans, Louisiana District ("the Corps").

3.

On or about August 25, 1997, Ronald Adams entered into a contract with the Corps ("the Contract") whereby Ronald Adams was to construct certain hurricane protection levees along the Westwego to Harvey Canal in Louisiana, which project was known as "Westwego to Harvey Canal,



EXHIBIT "B"

Hurricane Protection Levee, Orleans Village to Highway 45, First Enlargement" being Contract No. DACW29-97-C-0086) (hereinafter "the Project").

4.

The Contract between Ronald Adams and the Corps incorporated plans, specifications, and bid documents prepared and issued by the Corps. Copies of the Contract, plans, specifications, and bid documents are too voluminous for attachment hereto, but are in the possession of the Corps and are incorporated herein by reference.

5.

In preparing its bid for the Project, Ronald Adams relied upon the accuracy and completeness of the plans, specifications and bid documents. Ronald Adams prepared and submitted its bid to construct the Project based upon the accuracy and completeness of the plans, specifications and bid documents prepared and issued by the Corps. Ronald Adams based its bid price upon its ability to construct the Project in strict compliance with the plans, specifications and bid documents.

6.

During construction, it became obvious that the plans, specifications, and bid documents issued by the Corps, and upon which Ronald Adams based its bid price, were defective, incomplete, inadequate and insufficient for proper construction of the Project. As such, the Corps breached its implied warranty to Ronald Adams that the plans and specifications, when followed, would produce the desired result.

7.

During construction, Ronald Adams encountered unforeseen subsurface conditions during the course of the Project which differed materially from those represented in the plans and specifications, and differed materially from those normally encountered and generally recognized as inherent in the work set forth in the plans and specifications.

8.

During construction, while recognizing that Ronald Adams had encountered unexpected site conditions, the Corps failed to compensate Ronald Adams for the increased costs and impacts caused by the differing site conditions.

9.

The wrongful acts and omissions of the Corps in failing to recognize or compensate Ronald Adams' increased costs and impacts for the differing site conditions include, but are not limited to, the following:

(a) failing to issue plans, specifications and bid documents which showed that the top four (4) to six (6) feet of the soil of the borrow pit areas of the Project was humus material;

(b) failing to issue plans, specifications and bid documents which showed that the top four (4) to six (6) feet of soil throughout most areas of the Project was humus material;

(c) issuing plans, specifications and bid documents which incorrectly showed clay soil in the borrow pit areas of the Project and no humus;

(d) issuing plans, specifications and bid documents which incorrectly showed clay soil in all areas of the Project and no humus; and

(e) failing to adequately address the differing site conditions outlined in subparts (a) through (d) during construction.

10.

On September 14 and on September 21, 2000, Ronald Adams submitted its claim to the Corps for the damages caused by the acts and omissions of the Corps as set forth above. A copy of Ronald Adams' claim submitted to the Corps as set forth in the September 14 and September 21 letters is attached hereto as Exhibit "A". (The exhibits to the September 14, 2000 letter are too voluminous for attachment, but are in the possession of the Corps and re incorporated herein by reference). On

December 7, 2000, Ronald Adams certified its claim to the Corps after receiving no response from the Corps to its September 14 and 21, 2000 submissions. A copy of Ronald Adams' December 7, 2000 letter and claim certification are attached hereto as Exhibit "B".

11.

In its December 7, 2000 letter to the Corps, Ronald Adams requested a Final Contracting Officer's Decision. However, Ronald Adams has still not received a Final Contracting Officer's Decision. This action has been timely brought, as the Corps has had ample time to issue a decision on Ronald Adams' claim and has failed to do so.

12.

The site conditions described above amount to both a Type I and a Type II differing site condition, **as well as a constructive change to the contract and a breach of the Corps' implied warranty of the accuracy of the plans and specifications.** The acts and omissions of the Corps as set forth above amount to a wrongful failure by the Corps to compensate Ronald Adams under the Differing Site Conditions Clause **and/or the Changes Clause of the Contract, or pursuant to common law.**

13.

As a direct and proximate result of the Corps' failure to compensate Ronald Adams under the Differing Site Conditions Clause **and/or Changes Clause** of the Contract, Ronald Adams has incurred substantial damages as hereinafter set forth.

14.

Ronald Adams has been damaged by the differing site condition **and/or constructive change** in a number of ways, including, but not limited to, the following:

(a) Ronald Adams was forced to engage in excess dewatering at the start of the project, due to the presence of humus material;

(b) Ronald Adams incurred increased maintenance of drainage ditches due to the presence of humus material;

(c) Ronald Adams encountered subsidence and high maintenance of perimeter dikes which were caused by the presence of humus material;

(d) Ronald Adams was forced to engage in the chipping of trees and underbrush due to its inability to gain access to the site with normal construction equipment for clearing and due to the presence of humus material;

(e) Ronald Adams was forced to construct board haul roads in some areas, because the surface in some work areas was too soft to support excavation and haul equipment due to the presence of humus material;

(f) Ronald Adams was forced to use triple mats to support the draglines due to the presence of humus material;

(g) Ronald Adams was forced to use special excavation and haul equipment due to the presence of humus material;

(h) Ronald Adams incurred increased excavation costs because it was required to remove humus material to gain access to suitable material;

(i) Ronald Adams was forced to spend much more time on the Project than anticipated at the time of its bid, because of the time it lost in overcoming the effects of the humus material; and

(j) Ronald Adams was not paid for the removal of humus material.

## DAMAGES

WHEREFORE, PREMISES CONSIDERED, Ronald Adams demands judgment of and from the United States as follows:

(a) Compensatory damages in the amount of $2,404,685.53;

(b) Interest pursuant to the Contracts Disputes Act from and after December 7, 2000; and

(c) All attorney's fees, consulting costs and all other costs incurred by Ronald Adams in the preparation of the claim and in the prosecution of this action, pursuant to 5 U.S.C. § 504 and 28 U.S.C. § 2412.

Respectfully submitted,

RONALD ADAMS CONTRACTOR, INC.

BY: ______________________________

PHIL B. ABERNETHY (MSB #1023)
RICHARD M. DYE (MSB #99147)
POST OFFICE BOX 22567
JACKSON, MS 39225-2567
(601) 985-4536

ITS ATTORNEYS

OF COUNSEL:

Butler, Snow, O'Mara, Steven & Cannada, PLLC
17th Floor, AmSouth Plaza
210 East Capitol Street
Jackson, MS 39201
Telephone: 601-948-5711
Facsimile: 601-985-4500